DELANO (BURT v.). See Case No. 2,211.

---

## Case No. 3,751.

### DELANO v. The GALLATIN.

[1 Woods, 642.][1]

Circuit Court, S. D. Alabama. Dec. Term, 1871.

#### GENERAL AVERAGE.

1. To make a case for general average, the property saved and the property sacrified must be exposed to a common danger; the sacrifice of a part must contribute to the saving of the residue, and the sacrifice must be voluntary.

2. There can be no contribution for damage caused by the common danger to which both ship and cargo are exposed.

[Appeal from the district court of the United States for the southern district of Alabama.]

Edward S. Dargan, for libellants.

Peter Hamilton and T. A. Hamilton, for claimants.

WOODS, Circuit Judge. The facts were these: On the 17th of April, 1868, the ship Albert Gallatin was lying at anchor in the bay of Mobile, about twenty-five miles below the city of Mobile. She was loading with a cargo for Liverpool, and had on board 3,511 bales of cotton, most of which had been stowed, but 209 bales were still on deck, and 160 other bales were on the way to the ship on a lighter, but had not yet reached her. Delano, the master, was not on board, but the ship was in charge of Russell, the first mate. On the morning of April 17, between 2 and 3 o'clock, the ship was struck by lightning, and, immediately after, her cargo was discovered to be on fire in the after hold, under the cabin floor. The crew immediately commenced pumping water on the fire through the cabin floor, but without effect, to put it out. The mate then ordered holes to be cut in the ship's side to sink her. This effort had not succeeded when salving vessels came alongside, and the ship and cargo were surrendered by the mate to the salvors. They at once cut large holes in the ship's side, and, by means of steam pumps, forced large quantities of water into the hold, by which, after some hours, the ship was sunk. A large part of her hull still remained out of water. The salvors continued to pump water upon the ship, and succeeded in extinguishing the fire. The salvors then removed the cotton, pumped out the ship, towed her to an anchorage, when she was raised by the salvors without expense to her owners. The ship and cargo were libelled for salvage. [See Case No. 140.] The ship was delivered to

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the master on stipulation. He sold her, and the owners received the proceeds of the sale, and contributed nothing to pay the decrees for salvage. All costs and expenses of the litigation, the handling of the property, and the salvage decrees were paid exclusively from the proceeds of the sale of the cargo, the ship contributing nothing. The cargo was insured by underwriters, who have paid the losses, and waived abandonment of the cargo, and they have received the proceeds of the sale of the cargo, after paying the salvage decrees, costs, etc. There remains, however, in the hands of A. J. Ingersoll & Co., defendants, the sum of $19,257.47, being the proceeds of a portion of the cargo which was sold after the proceeds of a former sale had been seized by order of the admiralty court. After the sale of the ship, she was taken to New Orleans and repaired. It appears from the evidence of the witnesses, Vallette and Marcy, that the repairs put on her, made necessary by reason of the fire, exceeded $33,000, while the damage produced by the scuttling and sinking was a mere trifle. Marcy testified that "the scuttling produced no injury to the ship. Twenty-five dollars would have covered all the repairs caused by the scuttling." This witness is corroborated in this evidence by Joseph Loach. Vallette testifies: "I saw no damage from the scuttling of the ship. The damage was caused by the fire. It took a little over two months to repair the vessel. These repairs were made for the damage done by the fire, and not by the submersion." These are the facts as admitted by the parties, or clearly established by the proof.

The libel alleges that the ship was sunk and greatly damaged, voluntarily, for the sole purpose of saving the cargo, and that thereby the cargo was saved; that the sinking of the ship was the loss of the freight and ship, in all amounting to the value of $70,000, and that the libellants are entitled to participate in the average to that extent, subject to a deduction of the net proceeds of the sale of the ship after the fire. This case is governed by the well known rules of admiralty law, and it appears to me admits of easy solution. According to the decision of the supreme court in Columbian Assur. Co. v. Ashby, 13 Pet. [38 U. S.] 331, pronounced by Mr. Justice Story, the leading limitations and conditions to justify a general contribution are: "First, that the ship and cargo should be placed in a common imminent peril; second, that there should be a voluntary sacrifice of property to avert that peril; and thirdly, that by that sacrifice the safety of the other property should be presently and successfully attained." See, also, Barnard v. Adams, 10 How. [51 U. S.] 303; 1 Pars. Mar. Law, 288, where the rule is sufficiently stated, thus: "There must be a common danger, a voluntary loss, and a saving of the imperilled property by that loss."

In the case now on trial, the proof shows a

common danger to ship and cargo and a saving of the imperilled property by the scuttling of the ship, and that the scuttling was voluntary. I think it is clear that this is a case for general contribution for any loss occasioned by the voluntary sacrifice of ship to save the cargo, and that the fact that the loss of both ship and cargo was inevitable unless saved by the sacrifice, does not change the rule. Columbian Assur. Co. v. Ashby and Barnard v. Adams, supra. But I am just as clear that the damage for which general average is claimed must be the result of the voluntary sacrifice of a part to save a part. If the damage to the Albert Gallatin had resulted from the scuttling and sinking of the ship, the cargo should bear its proportion of the loss. But libellant claims general average for the loss resulting from the fire as well as from the sinking of the ship. There are, it appears to me, insuperable obstacles to the allowance of this claim. The loss by fire was the result of the common peril to which both ship and cargo were subjected. The damage from fire was not a contribution of a part to save a part. It was not a voluntary sacrifice any more than the loss of 204 bales of the cotton, part of the cargo by fire, was a voluntary sacrifice. The loss to the ship by fire did not contribute to the saving of the cargo. In a word, this loss has none of the elements which would entitle the owners of the ship to contribution. If libellants could show that they voluntarily sacrificed their ship by fire to save the cargo, and that the cargo was thereby saved, they would bring the case within the rule. Can we say that by the burning of the ship the safety of the cargo "was presently and successfully attained?" The only salvation for either ship or cargo was in submerging both. Whatever loss was occasioned by this ought to be borne by all the imperilled property pro rata.

The loss of the freight was complete before the ship was scuttled. At 7 o'clock, a. m., of April 19, not only was the cargo on fire, but the ship was on fire, the flames breaking through the cabin floor. (Evidence of Captain Lee.) The shop was in no worse condition for proceeding on her voyage after than before the scuttling, so far as damage from the sinking of the ship is concerned. Notwithstanding the submersion of the ship, she continued to burn and sustained such damage from the fire that she only brought $6,000, and it required $33,000 to repair the ravages of the fire. Can we then reasonably attribute the loss of the freight to the scuttling of the ship, when notwithstanding the scuttling the fire left nothing but the hulk of the ship; left her totally disabled, even if she had been afloat, from pursuing her voyage and earning her freight.

The evidence already cited, and there is nothing in the record to contradict it, shows that the ship sustained no damage, or but a very trifling one, from being scuttled. The cost of raising her and towing her to a safe anchorage, was paid by the cargo. The expense of repairing the damage caused by the scuttling, is placed at $25. This is so inconsiderable a trifle, as to be unworthy the consideration of the court. "De minimis non curat lex."

I think there is no case here for general contribution. The libel will therefore be dismissed, with costs.